UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KARL DAHLSTROM, II,

                     Plaintiff,                    Case No. 2:18-cv-101

v.                                                 Honorable Paul L. Maloney

S. BUTLER et al.,

                     Defendants.

_____/

## OPINION

              This is a civil rights action brought by a state prisoner under 42 U.S.C. §§ 1983,

1985, 1986, and state law.  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110

Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under

federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be

granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C.

§§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint

indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as

true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33

(1992).  Applying these standards, the Court will dismiss Plaintiff's complaint against all

Defendants other than Defendant Butler.

## Discussion

I.       Factual Allegations

              Plaintiff Karl Dahlstrom, II, is presently incarcerated with the Michigan

Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF), where the events

giving rise to his complaint occurred. Plaintiff sues the following MDOC employees at KCF: Warden Duncan MacClaren; Acting Deputy Warden Unknown Bigger; Inspector Jamie Corrigan; Captain Unknown Krause; Lieutenant A. Horton; Resident Unit Managers (RUM) Donald Mansfield and Todd Manard; Prisoner Counselor (formerly, Assistant Resident Unit Supervisor (ARUS)) Christopher Mortensen; Corrections Officers S. Butler, Wallace Maclean, and Unknown Laponza;[1] Administrative Assistant Dave Mastaw; Nurse Wendy Ball; Grievance Coordinators Richard Russell and Charlie Anderson; and CPC Denise Peller. He also sues the State of Michigan, the Michigan Department of Licensing and Regulatory Affairs (LARA) and its Director, Mike Zimmer, the Michigan State Board of Ethics, the MDOC, and MDOC Deputy Director Thomas Finco.

Plaintiff's complaint begins with an incident on October 2, 2016. He alleges that Officers Butler and Maclean performed a "shakedown" of his cell. (Compl., ECF No. 1, PageID.25.) Officer Butler opened Plaintiff's wall locker and her key broke off in the padlock securing that locker. Maclean inspected Plaintiff's footlocker after Plaintiff helped them remove a padlock from the footlocker. Officer Maclean remarked that Plaintiff's footlocker smelled like "booze" and then left. (*Id.*) Plaintiff subsequently discovered that one of his padlocks was missing, and that it was in Butler's possession. He asked her to return it. She told him that she would be sending it to the inspector and that Plaintiff would be required to pay for a new key because he must have jammed something into the lock.

Plaintiff protested that the lock was open, so Butler must have broken the key when attempting to remove it from the lock. Plaintiff asked her what he could do to protect his property.

---

[1] Sometimes spelled "Lapanza."

She told him, "I don't care about your requests or about your lock, I am just going to file my report to [the] Inspector so I can get a report to make you pay for my key." (*Id.*, PageID.26.)

Plaintiff asked Butler for a grievance form in Butler's office. She ordered him to step away from her desk. Officer Maclean heard Butler's order, and when Maclean approached the desk, Plaintiff turned around and walked away. As Plaintiff approached the hallway, Butler yelled to him, "[A]nd if you think you can grieve me I'll have you locked up and thrown into the hole!" (*Id.*, PageID.27.)

Officer Maclean subsequently went to Plaintiff's cubicle and Plaintiff asked him how he might obtain a new lock. Maclean told him to check with ARUS Mortensen. Plaintiff reported Butler's threat to another officer and then returned to his cell. Plaintiff subsequently left his unit to go to the prison yard. Near the exit to the yard, he saw Officers Butler and Maclean. They looked at him and smiled. Butler stated, "[W]ell, will [sic] see how he likes it when I write him up for 'Sexual Misconduct'!" (*Id.*, PageID.28.) Officer Maclean laughed and stated, "Yea go ahead." (*Id.*)

Plaintiff wrote grievances on Butler and Maclean and reported their actions to a sergeant in the chow hall. The sergeant (who is not a defendant in this action) promised that she would report Plaintiff's allegations to her supervisors. Plaintiff filed his grievances the following day, October 3. He also reported Butler and Maclean's actions to ARUS Mortensen and Inspector Corrigan. Mortensen promised that Plaintiff would be reimbursed for his padlock.

On October 13, Plaintiff met with Mortensen about his grievance. Mortensen focused on Plaintiff's desire for a new padlock, but Plaintiff explained that he was also concerned about the threats and retaliation.

On October 14, Plaintiff was called to the property room to receive a new padlock. The property officer said he was told that Plaintiff would "throw out" his grievance if he received a new padlock. (*Id.*, PageID.31.) Plaintiff told him that was not the case. The property officer had Plaintiff sign a disbursement for the new padlock. In other words, Plaintiff was required to pay for a new padlock, contrary to Mortensen's promise. On November 3, Plaintiff filed a grievance about being charged for the padlock.

On October 16, Plaintiff informed Lieutenant Horton of the incidents on October 2, and asked him to preserve video evidence from that date. Two weeks later, he asked Inspector Corrigan to do the same.

On November 2, Plaintiff's prison account was charged for the padlock.

On November 3, Plaintiff filed a grievance seeking reimbursement for the padlock, using form DTMB-1104.[2] He also filed complaints with the Michigan Civil Service Commission, the state ethics board, the state police, the state attorney general, and various crime victim services agencies. Several months later, the police told him that his complaint was turned over to internal affairs. The state ethics board and the office of Licensing and Regulatory Affairs denied his complaints.

On November 9, Grievance Coordinator Anderson called Plaintiff to his office and spoke with him about the grievance with the reimbursement form. Anderson initially claimed that Plaintiff did not obtain the reimbursement form from Anderson, as he was required to do, but eventually Anderson processed the grievance and returned it to Plaintiff with a grievance number.

---

[2] This form is used to file a claim against the State of Michigan for personal losses of less than $1,000. *See* http://www.michigan.gov/documents/micontractconnect/DTMB-1104_Claim_Against_the_State_of_Michigan_557082_7.docx (visited December 7, 2018).

On November 14, Plaintiff sent a kite to the KCF business office and the KCF inspector asking for reimbursement for the padlock. He was reimbursed on November 21.

On November 18, Plaintiff heard Butler say to another officer, "I own a shotgun and a pistol." (*Id.*, PageID.33.) Plaintiff contends this statement was directed at him.

On November 28, Plaintiff filed a complaint with the state police for "conspiracy/solicitation to cause . . . harm." (*Id.*) That same day, an inmate told Plaintiff that he saw Butler tell Officer Laponza that she wanted to "get even" with Plaintiff, and Laponza agreed. (*Id.*)

On November 30, Plaintiff asked the KCF inspector to preserve video of the incident from November 28. Plaintiff also asked the Grievance Coordinator for the status of one of his grievances because the time for a response at Step II of the grievance appeal process had run. A few days later, he learned that his grievance was not received by the warden's office. That same day, he filed a grievance asking for reimbursement of a $1.00 notary fee he incurred when seeking reimbursement for the padlock.

On December 1, Plaintiff asked Administrative Assistant Mastaw for evidence, reports, and copies of investigations of his complaints about Butler. Mastaw responded a few days later, stating that Plaintiff's request was not supported by prison policy. Plaintiff believes that Mastaw caused the grievance mentioned in the previous paragraph to disappear.

That same day, Officer Laponza allegedly told Plaintiff that "Butler will get you in trouble." (*Id.*, PageID.35.) Laponza followed Plaintiff out of the chow hall and whistled to a male officer with "sexual intentions," in an apparent attempt to get Plaintiff in trouble. (*Id.*)

Plaintiff also wrote to CPC Peller for enrollment in "enrichment" and "parole readiness" programs. (*Id.*, PageID.36.)

On December 3, Plaintiff kited ARUS Mortensen for any evidence of hearings regarding Plaintiff's complaints on Officers Butler and Maclean. Mortensen did not respond.

On December 6, Plaintiff wrote a grievance about the fact that his other grievance disappeared or was lost. On December 7, he received another form to appeal this grievance.

On December 7, Defendants Mortensen and Maclean denied Plaintiff's request for refund of the $1.00 notary charge.

On December 8, Plaintiff filed more grievances against Defendants Butler and Maclean.

On December 9, Plaintiff asked the KCF inspector for an investigation into his lost grievance. He also asked Administrative Assistant Mastaw and ARUS Mortensen for copies of records for completed investigations.

On December 22, Plaintiff met with healthcare officials who are not defendants in this action (Nurse Tara Weist and Nurse Nancy). They told him that his consultation with a surgeon for treatment of a hernia had not been scheduled, contrary to what he was promised at a prior visit.

On December 26, Plaintiff spoke with Nurse Weist and she told him that surgery for his hernia was not appropriate at that time because he had an intestinal blockage. She prescribed laxatives to clear the blockage.

In December and January, Plaintiff asked the Inspector and Lieutenant at KCF for transfer to another unit because he feared harassment or retaliation by Officers Maclean and Butler.

On January 17, 2017, Nurse Weist confirmed that x-rays showed Plaintiff was still constipated. She prescribed laxatives again and promised to have a surgeon consult with Plaintiff.

On January 18, Plaintiff filed a grievance against ARUS Maclean and the mailroom at KCF because there was a delay in the sending of his mail. It was sent 6 days after he submitted it.

On January 23, Officer Butler conducted a shakedown of Plaintiff's cell and took Plaintiff's blanket off his bunk for 10 minutes. The following day, Plaintiff complained to the warden about negligence, harassment, and excessive shakedowns.

On January 26, the MDOC office in Lansing recommended continued laxatives but no surgery for his hernia. Plaintiff subsequently filed a grievance complaining that he was being denied adequate medical care.

On February 2, Plaintiff complained to the KCF Inspector that Maclean had withheld Plaintiff's "criminal complaint" that was addressed to the state criminal division. (*Id.*, PageID.41.)

On February 9, Nurse Ball met with Plaintiff about the grievance he filed alleging inadequate medical care for his hernia. His grievance was later denied.

On March 5, Officer Butler allegedly threw Plaintiff's food bowl and spork onto the floor while Plaintiff was away from his cell. Plaintiff's spork went missing. Plaintiff filed a grievance about this incident the following day.

In the early morning hours of March 7, when Plaintiff was asleep, Plaintiff was "robbed." (*Id.*, PageID.43.) His footlocker was taken and items in it were stolen. His property was later discovered in the possession of a prisoner across the hall.

At the start of the morning shift that day, Plaintiff observed Butler tell Maclean that Plaintiff was a "pain in the ass," a few moments before Butler came to Plaintiff's bunk and started throwing Plaintiff's personal property on the floor. (*Id.*, PageID.44.) Butler ordered Plaintiff to

remove a wet towel from the end of his bunk and then wrote a "false" misconduct on Plaintiff for disobeying a direct order. (*Id.*, PageID.44-45.)

On March 10, Plaintiff filed a grievance seeking reimbursement for damage to his footlocker.

On March 13, Captain Krause held a hearing on the misconduct ticket written by Officer Butler. Krause refused to consider Plaintiff's evidence, witness statements, and video of the incident. Krause allegedly told Plaintiff, "If anyone does me wrong I will get even with them every time they step sideways" and that "officers stick together." (2d Suppl. to Compl., ECF No. 1-2, PageID.76.) Krause found Plaintiff guilty of a Class II misconduct and sanctioned him with loss of privileges for two days. (Class II and III Misconduct Hr'g Report, ECF No. 1-5, PageID.138.) That same day, Plaintiff filed a grievance on Warden MacLaren and Captain Krause for "obstructing justice," "gross negligence," and "improper corrections and inadequate training." (Compl., PageID.45.) After receiving this grievance, Warden MacLaren placed Plaintiff on modified access to the grievance process. Grievance Coordinator Anderson subsequently denied Plaintiff's request to file a grievance against Defendants MacLaren and Krause.

On April 12, Officer Butler told another officer, in Plaintiff's presence, that Plaintiff "isn't never going home so it doesn't matter what he does or says[.]" (Suppl. to Compl., ECF No. 1-1, PageID.49.)

On May 2, Plaintiff complained to Inspector Corrigan about "misconduct of fair hearing and the acts of Negligence by Administration." (*Id.*)

On May 24, Plaintiff filed a complaint with the FBI.

On May 28, Plaintiff complained to Lieutenant Horton about "Negligent Conduct, Deliberate Indifference and Discriminatory Harassment by staff." (*Id.*, PageID.50.)

On May 31, Grievance Coordinator Richard Russell allegedly denied Plaintiff's requests for "IA" reports, recommendations or "declaratory rulings." (*Id.*)

On June 13, Plaintiff complained to the Warden and Grievance Coordinator about being "shorted" his inmate pay. (*Id.*) The next day, he received reimbursement for the shortage.

On August 2, the mailroom denied Plaintiff's request for a book from a religious group. Plaintiff filed a grievance about this issue. On August 7, Plaintiff discussed this grievance over the phone with Officer Forrester (who is not a Defendant in this action). Defendant Butler was present for this discussion.

On August 14, Officer Butler removed property from Plaintiff's locker during a cell search, including a shampoo bottle with some shampoo, and a bottle containing liquid hand soap. Plaintiff contends that she did so without issuing a proper contraband removal ticket.

On August 22, Butler removed two chairs from every cube in Plaintiff's unit, allegedly without authorization. She was ordered to return the chairs that same day.

Plaintiff asked ARUS Maclean about the status of reimbursement for his footlocker. On September 5, Maclean told Plaintiff that RUM Mansfield withheld restitution for Plaintiff's footlocker for no reason or explanation and without authority to do so.

On September 7, Officer Butler allegedly "entrapped" Plaintiff in a misconduct. She saw Plaintiff walk into a restroom a few minutes before count time, and then called count time and rushed down to Plaintiff's cell to issue him an "out of place" misconduct ticket. (*Id.*, PageID.53.) Plaintiff filed a grievance about the issue six days later.

On September 18, RUM Mansfield found Plaintiff guilty of the out-of-place misconduct without reviewing the applicable evidence, apparently in violation of prison policy. Plaintiff alleges that Mansfield sanctioned him with five days of confinement in "toplock" (2d

Suppl. to Compl., ECF No. 1-2, PageID.78), but the hearing report attached to the complaint indicates a sanction of three days of loss of privileges. (Class II and III Misconduct Hr'g Report, ECF No. 1-5, PageID.141.)

On September 19, Plaintiff complained to Inspector Corrigan about the actions of Butler and Mansfield regarding the misconduct. Plaintiff also appealed the misconduct conviction, but his appeal was denied.

On October 11, Officer Maclean informed Plaintiff that his request for restitution for his footlocker had been dismissed by RUM Mansfield.

On October 20, Plaintiff asked an officer in another unit if he could be transferred to that unit. Four days later, Maclean asked Plaintiff, "You don't want to lock here anymore? . . . Well, this is going to cost you." (Suppl. to Compl., PageID.56.)

On October 25, Officer Butler told Plaintiff to pack up his things.

Based on the foregoing, Plaintiff claims that Defendants failed to protect him, failed to care for his medical needs, retaliated against him, denied him due process, breached a contract with him, and subjected him to cruel and unusual punishment. As relief, he seeks a declaratory judgment, an injunction, and damages.

II.     Immunity

Plaintiff may not sue the State of Michigan or any of its agencies in federal court. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly

abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Thus, the State of Michigan and the state agencies named as defendants in this action are immune from suit in this Court. *See McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010) (holding that the MDOC is immune from suit). Accordingly, the State of Michigan, the MDOC, the Michigan Department of Licensing and Regulatory Affairs, and the Michigan State Board of Ethics will be dismissed without prejudice because they are immune from suit.

III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

IV.    42 U.S.C. §§ 1985, 1986

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[3] a plaintiff must establish the following four elements:   (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.  *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).  The plaintiff further must demonstrate that the conspiracy was motivated by a class based animus, such as race. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Collyer*, 98 F.3d at 233; *Johnson*, 40 F.3d at 839; *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992). Plaintiff has not alleged or established that he is a member of a discrete and insular minority accorded special protection under the Equal Protection Clause because of inherent personal characteristics.  *Seguin*, 968 F.2d at 590.  Nor does he allege that Defendants' actions were motivated by his membership in any such group.  Indeed, Plaintiff alleges that Defendant Butler discriminated against Plaintiff because Plaintiff is a state prisoner.  (Compl., PageID.7.)  State

---

[3] Plaintiff cites "§ 1985(2)(3)" as a basis for his claims.  (*See* Compl., PageID.7.)  However, subsection (2) does not apply.  The first clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings.  *See* 42 U.S.C. § 1985(2).  In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights."  *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

prisoners are not afforded special protection under § 1985(3). Accordingly, for all the foregoing reasons, Plaintiff fails to state a civil conspiracy claim under § 1985.

For similar reasons, Plaintiff fails to state a claim under 42 U.S.C. § 1986, which provides a cause of action against those that have knowledge of a § 1985 conspiracy and neglect to prevent it. Because the Court has determined that the complaint does not state a § 1985 conspiracy, Plaintiff also fails to state a claim under § 1986. *See Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990) ("Where a plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986.").

V.       42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Respondeat Superior

Plaintiff sues a number of defendants, including MDOC Deputy Director Finco, Warden MacLaren, Acting Deputy Warden Bigger, Inspector Corrigan, Lieutenant Horton, Administrative Assistant Mastaw, RUM Manard, Grievance Coordinator Russell, and LARA Director Zimmer, because they are supervisors over other defendants and/or because Plaintiff complained to them about the actions of other officials and they failed to act in response to his complaints. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676;

*Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff's only allegations against Defendants Finco, Corrigan, Manard, and Zimmer are that they failed to properly supervise other officials or failed to respond to Plaintiff's complaints. Plaintiff fails to allege that they engaged in any active unconstitutional behavior. Accordingly, he fails to state a federal claim against them.

### B. Warden MacLaren

#### 1. Equal Protection

Plaintiff also contends that Warden MacLaren denied Plaintiff "equal protection of law" when denying Plaintiff's requests for transfer to another housing unit.[4] The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a

---

[4] Plaintiff does not indicate when these denials occurred. (*See* 2d Suppl. to Compl., ECF No. 1-2, PageID.81.)

member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right under the Constitution to choose the location of their confinement within a prison facility.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's claim fails because he does not allege that he was treated differently from similarly-situated inmates. His equal-protection claim is wholly conclusory.

### 2. Modified Access

Plaintiff also alleges that MacLaren placed Plaintiff on modified access to the grievance process. Placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445-47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. There is nothing

constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past.

Assuming Plaintiff contends that the placement on modified access constituted retaliation for the exercise of his protected conduct, Plaintiff does not state a claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claim fails at the second step of the analysis. The Sixth Circuit repeatedly has held that placement on modified access to the grievance process does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005). Thus, Plaintiff does not state a retaliation claim against MacLaren.

### 3. Prison Policy / State Law

Plaintiff makes a conclusory assertion that Defendant MacLaren did not comply with prison policies and state law and acted without proper authority. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Moreover, an alleged failure to comply

with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Thus, MacLaren's alleged failure to comply with prison policy and state law does not give rise to a claim under § 1983.

### 4. Conspiracy

Plaintiff also alleges that MacLaren was involved in a conspiracy with other defendants to harm Plaintiff. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy involving MacLaren and any other defendant are wholly conclusory. There are no facts from which to infer that MacLaren agreed to deprive Plaintiff of a federal right. Thus, for all the foregoing reasons, Plaintiff fails to state a federal claim against Defendant MacLaren.

### C. Acting Warden Bigger

Defendant Bigger is barely mentioned in the complaint. Apparently, he was negligent in his supervision of other officers and was involved in promulgating unidentified prison regulations. He also denied an appeal from one of Plaintiff's misconduct convictions. (*See* Class II and Class III Misconduct Appeal, ECF No. 1-5, PageID.139.) None of these allegations is sufficient to state a viable federal claim against Defendant Bigger.

### D. Lieutenant Horton

Defendant Horton allegedly failed to respond to Plaintiff's complaints about other officers, which does not state a claim for the reasons stated above. Plaintiff also claims that Defendant Horton conspired with other officials to discriminate and retaliate against him. Plaintiff's allegations provide no support whatsoever for these claims. Accordingly, Plaintiff fails to state a federal claim against Defendant Horton.

### E. Administrative Assistant Mastaw

Plaintiff apparently contends that Defendant Mastaw caused one of Plaintiff's grievances to disappear. This does not state a claim. Courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker,* 128 F. App'x at 445; *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.

1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Moreover, even if Mastaw improperly prevented Plaintiff from pursuing a prison grievance, Plaintiff's right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) was not compromised, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement for civil rights claims only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly prevented from using the grievance process, that process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

In addition, as indicated above, Mastaw is not liable merely because he did not act in response to one of Plaintiff's grievances. *See Shehee*, 199 F.3d at 300. Thus, Mastaw's conduct in connection with the grievance process could not have deprived Plaintiff of a federal right.

Plaintiff also claims that Mastaw conspired to retaliate against him, and deprived him of various constitutional rights, including his right to due process and equal protection. These claims are wholly conclusory. Thus, Plaintiff does not state a federal claim against Mastaw.

### F.  Captain Krause

#### 1.  Misconduct Hearing (Due Process)

Defendant Krause allegedly held a hearing on the misconduct ticket for disobeying a direct order and found Plaintiff guilty without reviewing any of Plaintiff's evidence.  Krause told Plaintiff that "we protect our own" and "officers stick together."  Plaintiff claims that Krause deprived him of due process because the hearing was not fair and Krause was biased.

The elements of a procedural due process claim are:  (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  Plaintiff fails to allege a protected liberty or property interest.  A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the resulting sanction "will inevitably affect the duration of his sentence," or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *See Sandin v. Conner*, 515 U.S. 472, 486 (1995).

Plaintiff does not allege that the misconduct conviction will have any impact on the duration of his sentence.  Furthermore, a loss of privileges for two days is not an atypical and significant hardship.  *See Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (30 days of loss of privileges and 30 days of "toplock" is not an atypical and significant hardship); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) ("[Plaintiff] has no due process claim for the loss of privileges and confinement to segregation.").  Consequently, Defendant Krause did not deprive Plaintiff of a protected property or liberty interest.

Because Plaintiff's protected interests were not at stake, Defendant Krause was not constitutionally obligated to provide Plaintiff with a fair hearing, or any hearing at all.  Thus, Defendant did not deprive Plaintiff of due process.  *See Experimental Holdings, Inc. v. Farris*, 503

F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim.").

### 2. Threat (Retaliation)

Krause also allegedly made a statement that "if someone does me wrong or writes grievance[]s on me, every time he steps out of line sideways, I'll get him." (Compl., PageID.23.) This statement arguably implicates Plaintiff's First Amendment right to engage in protected conduct without fear of retaliation. Filing a prison grievance is protected conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). To state a retaliation claim, however, Plaintiff must also allege an adverse action. That is, he must allege that Krause's conduct would deter a person of ordinary firmness from engaging in protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff has not alleged an adverse action. The conduct at issue here is a general threat to "get" a prisoner who files a grievance on Krause and "steps out of line." A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542. Krause's threat is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct. Thus, Plaintiff does not state a retaliation claim against Defendant Krause.

### 3. Threat (Cruel and Unusual Punishment)

Defendant Krause's threat does not satisfy the standard for an Eighth Amendment claim, either. The Eighth Amendment prohibits punishment that is "barbarous" or that contravenes

society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Plaintiff's allegations do not meet this standard. Allegations of verbal harassment or threats by prison officials do not constitute punishment within the meaning of the Eighth Amendment. *Id.* at 955. Nor do they rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Thus, Plaintiff's allegation that Krause made a verbal threat does not state an Eighth Amendment claim.

### 4. Other Claims

Plaintiff also claims that Krause deprived him of various other constitutional rights, including rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution. Plaintiff's allegations do not support such claims. Plaintiff asserts that Krause discriminated against him and conspired to retaliate against him, but he provides no factual allegations to support these conclusory assertions. Moreover, Defendant's actions did not deprive Plaintiff of any rights under the foregoing amendments to the Constitution. Accordingly, Plaintiff fails to state a federal claim against Defendant Krause.

### G. RUM Mansfield

#### 1. Misconduct Hearing

Like Defendant Krause, RUM Mansfield found Plaintiff guilty of a misconduct following a misconduct hearing. Specifically, Mansfield found Plaintiff guilty of a Class II misconduct. Plaintiff contends that the hearing was unfair and was based on insufficient evidence.

For the reasons discussed above with respect to Defendant Krause, Plaintiff does not state a claim. Mansfield did not deprive Plaintiff of a protected property or liberty interest. Whether the sanction Mansfield imposed was five days of toplock, as Plaintiff alleges, or three

days of loss of privileges, as indicated in the hearing report, it was not an "atypical and significant" hardship. *See Langford*, 2017 WL 6803554, at *3. Thus, there were no interests protected by due process at stake in the misconduct hearing.

Moreover, Mansfield's alleged failure to comply with state law or prison policy during the misconduct hearing does not in itself give rise to a claim under § 1983. *See Lugar*, 457 U.S. at 924; *Laney*, 501 F.3d at 580-81.

## 2. Restitution

Prison staff allegedly ordered that Plaintiff receive restitution for the damage to his footlocker caused by the prisoner who broke into it and stole Plaintiff's property. Mansfield allegedly dismissed the restitution order without authority to do so. (Suppl. to Compl., PageID.52.) These allegations do not state a claim.

The Fourteenth Amendment prohibits the deprivation of a protected liberty or property interest without due process, but Plaintiff does not allege that he was deprived of such a right. He does not plausibly allege that he had a right to restitution from the MDOC for damage to property caused by a prison inmate. Thus, he does not plausibly allege that Mansfield improperly deprived him of such a right.

Even if Plaintiff did have a right to restitution, a claim challenging that deprivation would be barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the

deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).

Plaintiff's claim is premised upon an unauthorized act by a state official, so he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). A prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff cannot sustain his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Indeed, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff does not state a claim against Mansfield with regard to the denial of restitution.

### 3. Other Claims

Plaintiff also claims that Mansfield conspired to retaliate against him, discriminated against him, violated "Bill of Attainder laws," denied him equal protection, deprived him of

freedom of speech, subjected him to excessive force, and violated other constitutional rights. (2d Suppl. to Compl., PageID.78-79.) These assertions are wholly conclusory and unsupported. In short, Plaintiff fails to state a federal claim against Defendant Mansfield.

### H.  Grievance Coordinator Russell

Defendant Russell allegedly denied Plaintiff's requests for information from internal affairs[5] and failed to follow prison policy by not signing MacLaren's decision to place Plaintiff on modified access to the grievance process. Plaintiff also makes conclusory assertions that Russell conspired to retaliate and discriminated against Plaintiff. None of these assertions states a viable claim under § 1983. Thus, Plaintiff fails to state a federal claim against Defendant Russell.

### I.  Grievance Coordinator Anderson

#### 1.  Placement on modified access

Defendant Anderson was allegedly involved in placing Plaintiff on modified access to the grievance process. Plaintiff contends that Anderson was retaliating against Plaintiff for filing grievances. However, as indicated above with respect to Defendant MacLaren, placement on modified access to the grievance process cannot support a retaliation claim because it is not an adverse action. *See Jackson*, 158 F. App'x at 660.

#### 2.  Denial of request to file grievances

Plaintiff also alleges that Anderson denied Plaintiff's requests to file grievances on Warden MacLaren and Captain Krause, in violation of due process. To the contrary, as the Court discussed with respect to Defendant Mastaw, prisoners do not have a due process right to an

---

[5] Attachments to the complaint indicate that Russell merely informed Plaintiff that Internal Affairs conducted a search of its files in response to Plaintiff's request and discovered no relevant reports. (MDOC Letter to Pl., ECF No. 1-6, PageID.165.)

effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. at 467; *Walker,* 128 F. App'x at 445. As also discussed, Michigan law does not create a liberty interest in the grievance procedure. *See Olim,* 461 U.S. at 249; *Keenan*, 23 F. App'x at 407. Because Plaintiff has no liberty interest in the grievance process, Defendant's conduct did not deprive him of due process.

In addition, as discussed above with respect to Defendant Mastaw, Anderson's decision could not have deprived Plaintiff of his right of access to the courts. If Anderson prevented Plaintiff from using the grievance process for a particular claim, then Plaintiff satisfied the statutory exhaustion requirement for bringing a civil rights claim. Thus, Anderson's interference with the grievance process could not have prevented Plaintiff from accessing the courts to pursue his civil rights claim. *See Kennedy,* 20 F. App'x at 470.

### 3. Misconduct Ticket

Plaintiff also contends that Anderson "sign[ed]" a misconduct ticket issued on Plaintiff by "health care" for being out of place, after Plaintiff missed a callout for a medical appointment. (Compl., PageID.14.) Plaintiff asserts that Anderson signed or issued the misconduct ticket in retaliation for Plaintiff's grievances against nurses in the healthcare unit.

Plaintiff fails to state a retaliation claim because there is no plausible connection between his grievance and the misconduct ticket. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory

motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial")
(internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare
allegations of malice on the defendants' parts are not enough to establish retaliation claims" that
will survive § 1915A screening).  In some circumstances, temporal proximity "may be 'significant
enough to constitute indirect evidence of a causal connection so as to create an inference of
retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo
v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  However, "[c]onclusory allegations of temporal
proximity are not sufficient to show a retaliatory motive."  *Skinner v. Bolden*, 89 F. App'x 579,
580 (6th Cir. 2004).

  Plaintiff merely alleges the ultimate fact of retaliation.  He alleges no facts from
which to reasonably infer that Defendant's actions were motivated by his protected conduct.  He
merely concludes that because he filed grievances sometime prior to Defendant's actions, the
misconduct ticket must have been motivated by those grievances.  The Sixth Circuit, however, has
been reluctant to find that temporal proximity between the filing of a grievance and an official's
adverse conduct, standing alone, is sufficient to establish a retaliation claim.  *Hill v. Lappin*, 630
F.3d 468, 476 (6th Cir. 2010).  This is especially true where, as here, the plaintiff is a prolific filer
of grievances.  *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that
temporal proximity to the filing of a grievance is insufficient because any adverse action "would
likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance
interviews").  Plaintiff apparently rests his retaliation claim on the fact that he filed a grievance
before he received the misconduct ticket.  These allegations are insufficient to support a retaliation
claim.

### 4. Other claims

Plaintiff asserts a variety of other legal theories for a claim against Anderson, including a violation of rights under the Fifth and Eighth Amendments, but none of these theories are supported by the allegations in the complaint. Consequently, Plaintiff does not state a federal claim against Defendant Anderson.

### J. CPC Peller

#### 1. Parole readiness programs

Plaintiff wrote to Defendant Peller about "parole readiness" programs. It is not clear whether she responded, but her failure to do so would not give rise to a claim under § 1983. Plaintiff does not have a constitutional right to, or protected liberty interest in, participation in prison rehabilitation programs. *See Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Argue*, 80 F. App'x at 429 (no constitutional right to rehabilitation, education or jobs); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1995) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee).

In addition, Plaintiff does not have a constitutional right to, or protected interest in, participation in programs that might improve his eligibility for parole, because he does not have a right to parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty

interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In Michigan, parole authorities have "broad powers" to deny parole, so the Michigan system does not create a liberty interest in parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994); *accord Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011); *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

In short, because Plaintiff does not have a constitutional right to, or liberty interest in, parole or prison rehabilitation programs, Peller's failure to respond to Plaintiff's request could not have deprived him of a constitutional right.

### 2. Revealing Plaintiff's grievance

In addition, Plaintiff alleges that he filed a grievance against Peller because she created a rule that only inmates who had not received a Class I or II misconduct ticket for a year were eligible for a garden plot in the prison yard. Peller allowed inmates working under her to see Plaintiff's grievance. Plaintiff contends she did this intentionally, as a means to retaliate and harm Plaintiff, because the grievance effectively labeled Plaintiff a "snitch." (Suppl. to Compl., PageID.87.)

Plaintiff's allegations do not state a claim. His assertion that Peller's actions were motivated by his grievance is conclusory. Moreover, there is no factual support in the complaint for Plaintiff's contention that being exposed as the filer of a grievance against Peller exposed him to a risk of harm from other inmates or to any other adverse consequences. As Plaintiff's actions demonstrate, it is not unusual for prisoners to file grievances against prison officials. Thus, Plaintiff has not sufficiently alleged an adverse action or a retaliatory motive.

For the foregoing reasons, Plaintiff does not state a federal claim against Defendant Peller.

### K. Nurse Ball

#### 1. Grievance review

Plaintiff's alleges that Defendant Ball met with him about a grievance he filed about inadequate care for his hernia. Responding to a grievance does not suffice to state a claim. *See Shehee*, 199 F.3d at 300. Indeed, according to Plaintiff's complaint, Nurse Weist made the decisions about care for Plaintiff's hernia, not Defendant Ball.

#### 2. Medical care - hernia

Even assuming that Ball was responsible for making decisions regarding Plaintiff's hernia, Plaintiff does not state a claim. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction

is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the

misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Here, Plaintiff acknowledges that he received some medical attention for his hernia, including a diagnostic x-ray. He was told that surgery was not appropriate at that time due to an intestinal blockage, and he was given laxatives to treat the blockage. This does not amount to no treatment at all. Indeed, Plaintiff's claim amounts to disagreement with medical personnel about the appropriate treatment for his hernia, which does not state an Eighth Amendment claim.

Moreover, Plaintiff alleges no details about his hernia or his discussions with Nurse Ball which would suggest that she was deliberately indifferent to a substantial risk of serious harm in the absence of surgical treatment. Thus, Plaintiff does not state an Eighth Amendment claim against her.

### 3. Medical care – blood tests

Plaintiff also contends that Defendant Ball refused to request a blood test to check Plaintiff's blood sugar and cholesterol as part of his annual screening. (2d Suppl. to Compl., PageID.86.) However, Plaintiff does not allege that he needed these tests to address a medical condition, let alone that the failure to conduct them subjected him to a risk of serious harm. Nor does he allege facts from which to infer that Nurse Ball was aware of such a risk. He merely alleges that a "history" of heart disease and diabetes was evident in his medical records. (*Id.*)

### 4. Retaliation

Plaintiff alleges that Defendant Ball issued the out-of-place misconduct ticket signed by Defendant Anderson, and that she did so as part of a conspiracy to retaliate against Plaintiff. He also alleges that she denied blood testing because she was aware of Plaintiff's grievances and his intent to bring a lawsuit regarding the lack of adequate care for his hernia. Plaintiff's retaliation claim is conclusory. The facts alleged do not permit a reasonable inference that the misconduct ticket or the denial of blood tests were motivated in any way by Plaintiff's protected conduct.

### 5. Other claims

Plaintiff also claims that Defendant violated prison policy and deprived him of equal protection. These assertions are wholly conclusory. Moreover, a violation of prison policy is not sufficient to give rise to a claim under § 1983.

For the foregoing reasons, Plaintiff does not state a federal claim against Defendant Ball.

## L.  ARUS Mortensen

ARUS Mortensen allegedly promised that Plaintiff would be reimbursed for his padlock, and Plaintiff eventually received that reimbursement.  Mortensen also denied Plaintiff's request for reimbursement of a $1.00 notary fee that Plaintiff paid to request reimbursement for the padlock.  These allegations do not state a claim under § 1983.  Plaintiff did not have a right to reimbursement under federal law.

In a supplement to the complaint, Plaintiff further alleges that Mortensen denied Plaintiff's request to be moved to another unit.  Apparently, Plaintiff was moved out of his unit following a "peaceful protest" resulting in damage to that unit.  (2d Suppl. to Compl, PageID.82.) Plaintiff was placed in a "disciplinary unit" where he feared "discriminatory harassment" by the unit officers due to his prior history with them.  (*Id.*)  Plaintiff asked to be moved back to his original unit, but Mortensen denied his request.

Mortensen's denial of Plaintiff's request does not state a claim.  Plaintiff does not have a right to be incarcerated in a particular prison or to be held in a specific security classification.  *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (noting that an inmate has "no justifiable expectation that he will be incarcerated in any particular prison within a State"); *Moody v. Daggert*, 429 U.S. 78, 88 n.9 (1976) (noting that "no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison"); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.").  Likewise, Plaintiff does not have a right to placement in a particular area of a prison.  Thus, the

denial of Plaintiff's request did not deprive him of anything to which he was entitled under the Constitution.

Moreover, Plaintiff's allegations do not support an Eighth Amendment claim. Inmates have a right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). Plaintiff does not allege that he was at risk of harm in the new unit, or that Defendant was aware of such a risk and deliberately disregarded it. Plaintiff alleges no facts whatsoever about the "harassment" he received in the past or the risk he faced at the time of his placement in the new unit.

Plaintiff also claims that Mortensen denied his request as a means to retaliate against Plaintiff, but this conclusory assertion is not enough to state a retaliation claim. Accordingly, Plaintiff fails to state a federal claim against Defendant Mortensen.

### M. Officer Laponza

Defendant Laponza allegedly told Plaintiff that Officer Butler would "get [Plaintiff] trouble." In addition, Butler told Laponza that Butler wanted to "get even" with Plaintiff, and Laponza agreed. Laponza also whistled at another officer in a manner that Plaintiff contends was designed to get him into trouble. These allegations do not state a claim. Laponza's conduct amounts to verbal harassment and idle threats, which do not give rise to a claim under § 1983. *See Wingo v. Tenn. Dep't of Corrs.*, 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Ivey*, 832 F.2d at 955).

Moreover, there is no support for a conspiracy claim against Laponza under § 1983. Plaintiff asserts that Laponza conspired with other officers to harm him, but Plaintiff's allegations do not permit a reasonable inference that Laponza agreed to deprive Plaintiff of a federal right. Thus, Plaintiff fails to state a federal claim against Defendant Laponza.

### N.  Officer Maclean

Defendant Maclean allegedly made a few statements to Plaintiff, such as "you don't want to lock here anymore? . . . this is going to cost you."  These statements do not state a claim. *See Wingo*, 499 F. App'x at 455.

Maclean was also present when Butler searched Plaintiff's cell and broke her key inside Plaintiff's padlock, when Butler threatened to put Plaintiff in the "hole" if he filed any grievances against her, when Butler called Plaintiff a "pain in the ass," and when Butler joked that she would write a "sexual misconduct" ticket on Plaintiff.  However, Maclean's presence for these incidents does not make him liable for Butler's actions.

Moreover, Maclean's agreement with Butler's comment about the sexual misconduct ("Yea go ahead") is not evidence of a constitutional violation by Maclean, or of a conspiracy to deprive Plaintiff of a federal right.  Butler's statement was merely an idle threat. Apart from expressing agreement with that statement, Plaintiff does not allege that Maclean took any action in concert with Butler to deprive Plaintiff of a federal right.

Maclean also denied Plaintiff's request for reimbursement of his notary fee, but as discussed with respect to Defendant Mortensen, that denial did not deprive Plaintiff of a federal right.  Accordingly, Plaintiff does not state a federal claim against Defendant Maclean.

### O. Officer Butler

The Court concludes that Plaintiff states at least a retaliation claim against Plaintiff. Accordingly, the Court will not dismiss Defendant Butler.

VI. <u>State Law</u>

Plaintiff does not state a claim under federal law against Defendants Maclean, MacLaren, Mastaw, Horton, Krause, Corrigan, Bigger, Mortensen, Laponza, Ball, Russell, Finco, Peller, Zimmer, Mansfield, Manard, and Anderson. To the extent Plaintiff asserts a claim against them under state law, the Court declines to exercise supplemental jurisdiction over such claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993). Accordingly, the Court will dismiss the state law claims against the foregoing defendants without prejudice.

VII. <u>Appointment of Counsel</u>

Plaintiff has filed a motion for appointment of counsel. (ECF No. 3.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the

complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606.

The Court has carefully considered the foregoing factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff contends that he has various difficulties stemming from past head injuries, but his pleadings indicate that he has little difficulty understanding his rights and articulating the basis for his claims. Moreover, the complexity of Plaintiff's case has been significantly reduced because only one defendant remains. Thus, Plaintiff's motion will be denied.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that all Defendants other than Defendant Butler will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Defendants State of Michigan, the Michigan Department of Licensing and Regulatory Affairs (LARA), the Michigan State Board of Ethics, and the MDOC will be dismissed because they are immune from suit. Defendants Maclean, MacLaren, Mastaw, Horton, Krause, Corrigan, Bigger, Mortensen, Laponza, Ball, Russell, Finco, Peller, Zimmer, Mansfield, Manard, and Anderson will be dismissed because Plaintiff fails to state a federal claim against them. In addition, Plaintiff's motion for appointment of counsel will be denied.

An order consistent with this opinion will be entered.


Dated:   January 3, 2019                              /s/ Paul L. Maloney
                                                      Paul L. Maloney
                                                      United States District Judge