UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KARL DAHLSTROM #269338, II,                     Case No. 2:18-cv-00101

                Plaintiff,                     Hon. Paul L. Maloney
                                                  U.S. District Judge

   v.

S. BUTLER, et al.,

                Defendants.
_____/

## **REPORT AND RECOMMENDATION**

### I. Introduction

This is a civil rights action brought by state prisoner Karl Dahlstrom pursuant to 42 U.S.C. § 1983. On January 3, 2019, this Court issued an opinion and order dismissing twenty-one Defendants and numerous claims. (ECF Nos. 9-10.) The remaining claims are for retaliation against Defendant Corrections Officer Seham Butler.

Defendant Butler filed a motion for partial summary judgment based upon the failure to exhaust administrative remedies. (ECF No. 23.) The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court partially grant Defendant's motion for summary judgment. Specifically, the undersigned recommends that the Court grant Butler's motion as to Dahlstrom's claim that Butler's September 11, 2017, misconduct ticket was retaliatory because

Dahlstrom failed to exhaust his administrative remedies with respect to this claim. It is recommended that the Court deny the motion as to the remaining claims.

Dahlstrom has filed a number of motions that are pending before the Court. This report and recommendation addresses a number of these motions, and respectfully recommended that the Court (1) deny his motion for a preliminary injunction (ECF No. 26), (2) deny Dahlstrom's motion to strike insufficient defenses (ECF No. 38), (3) deny his motion for judgment on the pleadings (ECF No. 59), and (4) deny his motion for judicial notice (ECF No. 60).

## II.  Factual Allegations

Dahlstrom alleges that Defendant Butler searched his cell on October 2, 2016. (ECF No. 1, PageID.25.)  During the search, Defendant Butler broke a key in the padlock securing a locker.  (*Id*.)  Dahlstrom discovered what had happened and that Defendant Butler was sending his missing padlock to the Inspector.  (*Id*.)   When Dahlstrom asked Butler for a grievance form, she allegedly responded:  "[I]f you think you can  grieve me I'll have you locked up and thrown into the hole!"  (*Id*., PageID.27.) Dahlstrom says he overheard Defendant Butler state: "[W]ell, will [sic] see how he likes it when I write him up for 'Sexual Misconduct'!" (*Id*., PageID.28.)  Dahlstrom says that he wrote grievances on Defendant Butler and others.

Dahlstrom says that, on November 18, 2016, he heard Butler state: "I own a shotgun and a pistol." (*Id*., PageID.33.)  Dahlstrom believes that this statement was directed at him.  On December 1, 2016, Dahlstrom says that officer Laponza told him that "Butler will get you in trouble."  (*Id*., PageID.35.)

2

Dahlstrom says that, on January 23, 2017, Defendant Butler searched his cell and took a blanket off Dahlstrom's bunk for ten minutes.  Dahlstrom believes that he was being harassed.

Dahlstrom says that, on March 5, 2017, Defendant Butler threw his food bowl and spork on the floor.  Two days later, on the morning of March 7, 2017, Dahlstrom heard Defendant Butler state to another officer that Dahlstorm was a "pain in the ass," a few minutes before she came into his cell and started throwing his property on the floor.  (*Id.*, PageID.44.)  Dahlstrom says that Defendant Butler ordered him to remove a wet towel from the end of his bunk and then wrote a false misconduct for disobeying a direct order.  (*Id.*, PageID.44-45.)  Dahlstrom was found guilty of a class II misconduct and given two days loss of privileges.  (ECF No. 1-5, PageID.138.) Dahlstrom says he filed a grievance.

On April 12, 2017, Dahlstrom says he overheard Defendant Butler tell another officer that Dahlstrom "isn't never going home so it doesn't matter what he does or says[.]" (ECF No. 1-1, PageID.49.)   Defendant Butler removed property from Dahlstrom's locker and cell on August 14 and 22, 2017.

On September 11, 2017, Dahlstrom received an out of place misconduct ticket from Defendant Butler.  Dahlstrom says that Defendant Butler "entrapped" him by calling for count after she observed Dahlstrom go the restroom so that she could issue him an out of place misconduct ticket.  (*Id.*, PageID.53.)  Dahlstrom was found guilty of the misconduct and sanctioned to five days of Toplock (in-cell) confinement.  (ECF No. 1-5, PageID.141.)

### III.  Retaliatory claims

Given the varied nature of the claims in this case, the Court's first task in addressing the exhaustion issue is to identify the retaliation claims for which exhaustion is in dispute.  The Court notes that Butler's motion for summary judgment asks the Court to dismiss several alleged statements and acts by Butler because the alleged statements and acts were not exhausted through the grievance process.  (ECF No. 317.)  Dahlstrom's response to Butler's motion for partial summary judgment clarifies that several of these alleged statements and acts by Butler are simply facts that support his lawsuit rather than stand-alone retaliation claims.  (ECF No. 37, PageID.581-82.)  Upon review of the pleadings in this matter, this Court will assess the following three retaliation claims against Defendant Butler to determine whether Dahlstrom has exhausted his administrative remedies:

1.    Dahlstrom's claim that Butler retaliated against him by threatening to throw Dahlstrom into the "hole" or set him up for a sexual misconduct ticket if he wrote a grievance on her regarding the October 2, 2016, padlock incident;

2.    Dahlstrom's claim that Butler retaliated by issuing a false retaliatory misconduct ticket for disobeying a direct order when Dahlstrom refused to remove a wet towel from the end of his bunk on March 7, 2017; and

3.    Dahlstrom's claim that Butler retaliated by issuing a false retaliatory misconduct ticket for being out of place on September 11, 2017.[1]

Defendant Butler argues that Dahlstrom failed to exhaust each of his claims.

## IV.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on

---

[1]    Butler may, of course, file a motion in limine before trial asking the Court to exclude evidence relating to these acts and statements.

a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is

required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'"  *Id.* (quoting *Booth*, 532 U.S. at 737*)*.  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of

becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ P, V.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.   The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.   Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ T, BB.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ T, FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶¶ T, FF.  The Grievance and

Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust

administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011).  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file

---

[2]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## VI. Analysis

Defendant concedes (ECF No. 24, PageID.319-20) that Dahlstrom exhausted two of the three retaliation claims at issue here.   First, Butler concedes that

---

[3]  In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596.  For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

Dahlstrom exhausted his claim that Butler retaliated against him by threatening a sexual misconduct ticket or considering placing him in segregation for filing grievances.  Second, Butler concedes that Dahlstrom exhausted his claim that Butler retaliated against him by writing a false misconduct ticket for disobeying a direct order on March 7, 2017.

Therefore, the only retaliation claim for which exhaustion is at issue is Dahlstrom's claim that Butler retaliated by issuing a false retaliatory misconduct ticket for being out of place on September 11, 2017.

On September 11, 2017, Butler issued Dahlstrom a Class II misconduct ticket for being out of place.  A portion of the ticket is shown below.

MICHIGAN DEPARTMENT OF CORRECTIONS Case 2:18-cv-00101-HYJ-MV    ECF No. 24-3 filed 04/17/19  PageID.437  Page 4 of 14

## MISCONDUCT REPORT

CSJ-228
10/10    4835-3228

| Prisoner Number: 269338- | Prisoner Name: Dahlstrom | | Facility Code: KCF | Lock: H-1-18 | Violation Date: 09-11-2017 |
|---|---|---|---|---|---|
| Time and Place of Violation: 1100hrs H-1- 17 THROUGH 24 | | Contraband Removal Record Provided to Prisoner? ☐ Yes  Date | | | ☒ N/A |

Misconduct Class: ☐ I  ☒ II  ☐ III    Charge(s): OUT OF PLACE

Describe Violation  (If contraband involved, describe in detail; identify any other employee witnesses):

While taking count I directly observed prisoner Dahlstrom #269338 was not on his bunk. The count light is on and working and this officer announced,  "COUNT TIME." loud and clear. Dahlstrom was out of his bunk and in the hallway. Dahlstrom did not have staff authorization to be out of his bunk during count.

Dahlstrom was Id'd by daily contact and H-1 Unit count board.

| Reporting Staff Member's Name (Print) S Butler | Reporting Staff Member's Signature | Date and Time Written 09-11-2017  1300hrs |
|---|---|---|

### REVIEW

Location/Verification/Condition of Evidence:

Elevated to Class I at review:  If "yes", explain reason:
☐ No  ☐ Yes

### COMPLETE THIS SECTION ONLY FOR REVIEW OF CLASS I MISCONDUCT

| Status Pending Hearing:  ☐ Bond | ☐ Segregation | ☐ Confinement to Cell/Room | ☐ Other |
|---|---|---|---|
| Reason if Non-Bond:  ☐ Non-Bond List | ☐ Bond Revoked (must give reason) | | |

| Date and Time Given this Status: | Who Notified in Housing Unit of Status: |
|---|---|

| Hearing Investigator Requested? ☐ No  ☐ Yes | Witnesses Requested?  ☐ No  ☐ Yes |
|---|---|
| Relevant Documents Requested? ☐ No  ☐ Yes  If yes, list: | If yes, list: |

| Additional Comments: It was Entrapment. NO 5 Minute Warning. | Prisoner Waives 24 Hour Notice of Hearing? ☒ No  ☐ Yes  Hearing Date:  9-14-1 | |
|---|---|---|
| Reviewing Officer's Name (Print)  Sgt ShuNiL | Reviewing Officer's Signature  S Shul | Review Date and Time  9-12-17 / 0746 |
| I have received a copy of this report. My signature does not necessarily mean that I agree with the report. ☐ Prisoner refused to sign. Copy given to prisoner. | Prisoner's Signature  Karl Dahlstrom | Date  9-12-17 |

### WAIVER OF CLASS II OR III HEARING

| I understand I have a right to a hearing. I waive my right to a hearing and plead guilty to all charges. I also waive my right to appeal and accept the sanctions imposed. | Prisoner's Signature | Date |
|---|---|---|

### SANCTIONS IMPOSED (Hearing Investigator enters begin and end date for Class II misconduct)

| Dave Tonlook | Regina | Ender | | |
|---|---|---|---|---|

(ECF No. 24-3, PageID.437.)

Dahlstrom pleaded not guilty to this misconduct ticket and a hearing was held.

Resident Unit Manager (RUM) Mansfield found Dahlstrom guilty of the charge.  (*Id.*,

PageID.436.)  A portion of the hearing report is shown below.

HEARING REPORT (Do Not Complete If Hearing Waived)

**Evidence and/or prisoner statement in addition to misconduct report:** Prisoner is present at hearing and enters a plea of Not Guilty to the charge.   Misconduct reviewed.  Prisoner states that 5 minutes to could was never called in the unit on 9/11/17 and he did not know it was close to count time.  Prisoner states that as soon as he he count he left the bathroom.  Prisoner states that other prisoners were also out of their cubes at that time.

**Reasons for findings:** Prisoner is found guilty of the chaged based on the reporting officer statements.  Officer Frank was interviewed and attested that he called "5 Minutes to Count" within the housing unit prior to count on 9/11/17.  Officer Frank also notes, as well as the reporting officer that no other prisoners were out of there cubes at the time.  Video Surviellance also verifies that Dahlstrom was othe only prisoner in the unit that was not in his cube when count time was called.  Prisoner was not in his cube nor on his bunk when count was taken. Charge upheld.

(*Id.*)

On appeal, Dahlstrom raised a number of challenges to the proceeding, but did

not claim retaliation.  The appeal form associated with this misconduct ticket states:

BRIEFLY DESCRIBE THE BASIS OF YOUR APPEAL: Violation of Due Process + PD 03.03.105 ℗
- Seek Dismissal
- The Hearing Reviewer Sgt shunk had a duty to dismiss where report
  is without support or fails to allege behavior violations charges.
- Prisoner was never given Notice of ticket. Hearing handbook pg 3# 11 (1-3)
- The Facts and evidence were improperly written, lacking all the facts
  To offer _fair hearing_. Statements were conclusory + inappropriate,
- Violation must be detailed as possible without unmeaningful and
  unreasonable statements. Std for hearing (pg 1)(B)(C) p92)
  Hearing Reviewer assured me Video would be reviewed to support
  evidence of prs. statements And H.O. failed to comply; As light wasn't
  Turned on at 5 min warning as officer Franks claims he announced.
- Preponderance of evidence std Violated pgs 22-26, 33 (1)(34) H. Handbook
- Reviewer viol. policy PD. 03.03.105 (0)(3,4) + Report lacks reasons for
  excluding evidence - insufficient to decide case, and Prisoners witnesses were
  not investigated, record inadequate (do not write below this line) Hearing office Biased.

APPEAL RESPONSE:

Misconduct and appeal reviewed. The misconduct was written, reviewed and heard within the scope of Policy, Procedure and Administrative Rules.  Prisoner Dahlstrom 269338 states that he did not hear a five minutes to count be called. Prisoner Dahlstrom was not on his bunk for count this clearly is a violation of policy and procedure and does not matter if he heard the 5 minutes to count called or not. All the elements of the charge have been met.  Charge upheld.

(*Id.*, PageID.435.)

On appeal, RUM Mansfield's decision was upheld.  (*Id.*)

Defendant Butler argues that because Dahlstrom did not raise his retaliation claim regarding the September 11, 2017, misconduct ticket, he has not exhausted his administrative remedies with respect to this claim.

A review of the documents associated with this misconduct, which are shown above, indicates that Dahlstrom did not raise a retaliation claim during the misconduct proceedings.

Dahlstrom, however, contends in his affidavit that he told RUM Mansfield that Butler did not turn on the "red light indicator" at 5 minutes to the count in order to retaliate against him.  (ECF No. 37-1, PageID.601.)  The undersigned concludes that this statement is not sufficient to create a genuine issue of material fact regarding exhaustion because it is inconsistent with Dahlstrom's earlier statements.   First, Dahlstrom's claim is inconsistent with what he wrote on the misconduct ticket. There, he indicated that he was entrapped.  (ECF No. 24-3, PageID.437.)  Second, this claim is inconsistent with what he wrote on his misconduct hearing appeal form. On this form, Dahlstrom listed a number of complaints about Mansfield's hearing on the ticket.  But Dahlstrom did not allege that Butler retaliated against him.  (ECF No. 24-3, PageID.435.)  Dahlstrom's many objections to this misconduct ticket are obvious from the record:  Dahlstrom thought he was entrapped, and he thought that his due process rights were violated by the procedures employed by Mansfield.  (*Id.*, PageID.437, 435.)  But Dahlstrom did not allege that the ticket was written for retaliatory purposes.  Dahlstrom now asks the Court to credit – at least for purposes

15

of summary judgment – that the misconduct proceeding was retaliatory in nature. The record indicates that Dahlstrom had multiple opportunities to raise this issue in the context of the misconduct hearing and the appeal, but failed to raise this issue.[4] Thus, the Court declines to find that a genuine issue of material fact regarding whether Dahlstrom raised retaliation in the context of the misconduct hearing and the appeal.

The Court must, nevertheless, determine whether Dahlstrom's failure to raise the retaliation issue during the misconduct proceeding or the subsequent appeal constitutes a failure to exhaust.  Pursuant to *Siggers v. Campbell*, 652 F.3d at 693-94, Dahlstrom was required to raise his retaliation claim in the misconduct hearing, or on appeal, to allow prison officials an opportunity to address this claim.  Thus, in the opinion of the undersigned, Dahlstrom failed to exhaust this claim.

The undersigned respectfully recommends that this Court dismiss without prejudice Dahlstrom's claim that Butler issued a false retaliation ticket against him on September 11, 2017.  If the Court dismisses this claim, the only remaining retaliation claims with be the following:

> 1)  Dahlstrom's claim that Butler retaliated against him by threatening to throw Dahlstrom into the "hole" or set him up for a sexual misconduct ticket if he wrote a grievance on her regarding the October 2, 2016, padlock incident; and

---

[4]    It should also be noted that **Grievance KCF-17-09-0760-27A** (ECF No. 24-2, PageID.343-347) raised the retaliation issue, but was rejected.  A claim raised in a rejected grievance does not exhaust the associated claim.    *Jones*, 549 U.S. 218-19.

2)  Dahlstrom's claim that Butler retaliated by issuing a false retaliatory misconduct ticket for disobeying a direct order when Dahlstrom refused to remove a wet towel from the end of his bunk on March 7, 2017.

## VII.  Motion for Preliminary Injunction

Dahlstrom requests preliminary injunctions to remedy what he sees as a host of legal violations.  (*See* ECF No. 26, PageID.478, 499-501 (seeking, among other things, an end to the unlawful imprisonment of "the dangerously mentally ill," a competency evaluation of Defendant, protection from mentally ill correction officials, a court ruling, bifurcation of trials, enforcement of judgment, damages for injury to reputation, trial by jury, writ of mandamus directing the MDOC to provide contractual rules for waste management, and "righteousness, justice and accountability").)  (ECF No. 26, PageID.498-501.)

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies."  *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court.  *Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).  In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction.  *Id.*

17

These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009.  Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984).  The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Dahlstrom's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action.  *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989).  Dahlstrom has not made such a showing.  Dahlstrom has stated a claim upon which relief *may be granted*, however, he has not presented evidence that establishes a strong or substantial likelihood of success on the merits of his underlying claims.

In addition, a party seeking a preliminary injunction must show a relationship between the irreparable injury claimed in the motion and the claims pending in his complaint.  *Colvin v. Caruso,* 605 F.3d 282, 299-300 (6th Cir. 2010).  A motion for preliminary injunction is not the means by which a plaintiff already in court on one

18

claim can seek redress for all other conditions of confinement that he finds actionable. Simply put, a plaintiff is not entitled to a preliminary injunction on claims not pending in the complaint.  *Ball v. Famiglio,* 396 F. App'x 836, 837 (3d Cir. 2010). Here, Dahlstrom is seeking preliminary injunctions to remedy claims that are not before the Court in this case.

A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages.  *Overstreet*, 305 F.3d at 578. Dahlstrtom has failed to assert factors that establish that he will suffer irreparable harm in the absence of an injunction.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction.  Any interference by the federal courts in the administration of state prison matters is necessarily disruptive.  The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.  *Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).  That showing has not been made here.

Accordingly, the undersigned respectfully recommends that this Court deny Dahlstrom's motion for a preliminary injunction.  (ECF. No. 26.)

### VIII. Motion to Strike Insufficient Defenses

Dahlstrom asks the Court to strike arguments made by Butler in the pleadings associated with her motion for summary judgment.  (ECF No. 38.)  The Court is prepared to address all of the claims and arguments raised by this motion without a

motion to strike by Dahlstrom.  The undersigned respectfully recommends that this motion be denied.

### IX. Motion for Judgment on the Pleadings

Dahlstrom asks this Court to rule on his motion for preliminary injunction and Butler's motion for summary judgment.   The undersigned has made recommendations with regard to these motions and the Court will rule on them.  The undersigned respectfully recommends that Dahlstrom's motion for judgment on the pleadings (ECF No. 59) be denied.

### X. Motion for judicial notice.

Dahlstrom has filed a motion for judicial notice.  (ECF No. 60.)  Dahlstrom lists legal terms and a purported definition for each term and federal statutes. Dahlstrom's motion serves no purpose and is unnecessary.  Dahlstrom will have an opportunity to ask the Court to judicially notice matters relating the case prior to trial.  Accordingly, the undersigned recommends that this motion (ECF No. 60) be denied.

### XI.  Recommendation

The undersigned respectfully recommends that this Court grant the motion for summary judgment in part and deny the motion in part as follows:

      1.     Grant the motion by dismissing, without prejudice, Dahlstrom's retaliation claim arising from the September 11, 2017, misconduct ticket; and

      2.     Deny the motion as to the remaining claims.

In addition, it is recommended that the Court (1) deny Dahlstrom's motion for a preliminary injunction (ECF No. 26), (2) deny Dahlstrom's motion to strike insufficient defenses (ECF No. 38), (3) deny his motion for judgment on the pleadings (ECF No. 59), and (4) deny his motion for judicial notice (ECF No. 60).

If the Court adopts this recommendation, the following two retaliation claims will remain:

    1.    Defendant Butler threatened to throw Dahlstrom into the "hole" or set him up for a sexual misconduct ticket if he wrote a grievance on her regarding the October 2, 2016, padlock incident; and

    2.    Defendant Butler issued a false retaliatory misconduct ticket for disobeying a direct order when Dahlstrom refused to remove a wet towel from the end of his bunk on March 7, 2017.

Dated:  February 5, 2020          /s/ *Maarten Vermaat*
                              MAARTEN VERMAAT
                              U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).