UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KARL DAHLSTROM #269338, II,        Case No.  2:18-cv-00101

    Plaintiff,        Hon.  Hala Y. Jarbou
            U.S. District Judge

v.

S. BUTLER, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

**I. Introduction**

This is a civil rights action brought by state prisoner Karl Dahlstrom pursuant to 42 U.S.C. § 1983.  Dahlstrom initiated this action by filing an unverified complaint on July 2, 2018.  (ECF No. 1.)  Dahlstrom's complaint was approximately 102 pages in length.  (ECF Nos. 1, 1-1 and 1-2.)  Dahlstrom also attached about 82 pages of exhibits to his complaint.  (ECF Nos. 1-3 to 1-8.)  He named 22 Defendants.

On January 3, 2019, this Court issued an opinion and order dismissing all but one Defendant – Corrections Officer (CO) Butler – and three retaliation claims. (ECF Nos. 9, 10.)  CO Butler then filed a motion for partial summary judgment based on Dahlstrom's failure to exhaust his administrative remedies.  (ECF Nos. 23, 24.)  On March 26, 2020, this Court issued an opinion granting this motion, in part, and dismissing one of Dahlstrom's three remaining retaliation claims.  (ECF No. 70, PageID.1334.)

1

As a result of this Court's prior orders, Dahlstrom's remaining claims involve allegations that CO Butler retaliated against him, in violation of the First Amendment, on two occasions: **first, on October 2, 2016,** by allegedly threatening to throw Dahlstrom "in the hole" or setting him up for a sexual misconduct ticket if he filed a grievance complaining about damage to his padlock during a search by COs; and, **second, on March 7, 2017,** by issuing a false misconduct ticket for disobeying a direct order after Dahlstrom failed to remove a wet towel from his bunk. (*See* ECF No. 64, PageID.1261 (summarizing surviving claims).)

Corrections Officer Butler has filed a motion for summary judgment on the merits of Dahlstrom's claims. (ECF Nos. 105, 106.) Dahlstrom filed a response. (ECF No. 111.)

The undersigned respectfully recommends that the Court grant Defendant Butler's motion for summary judgment with respect to the first claim because Dahlstrom has failed to establish that he engaged in protected conduct prior to the alleged adverse action. The record before the Court shows that the MDOC replaced the padlock or reimbursed Dahlstrom, and that Dahlstrom did not suffer harm as a result of damage to the padlock. Thus, his claim is *de minimis*. Furthermore, as to the second retaliation claim, Butler has demonstrated that she would have issued Dahlstrom a ticket for disobeying a direct order regardless of Dahlstrom's alleged protected conduct. Dahlstrom does not dispute that he violated an order, and he has not shown that other COs forgo writing tickets in similar circumstances. Thus,

Dahlstrom has failed to show a causal connection between his alleged protected conduct and Butler's adverse action.

Alternatively, the undersigned respectfully recommends that the Court conclude that Defendant Butler is entitled to qualified immunity from liability.

Finally, if any of Dahlstrom's claims survive summary judgment on the merits, the undersigned recommends that Dahlstrom's claims against Butler in Butler's official capacity be dismissed under the Eleventh Amendment.

## II. Factual Allegations

Dahlstrom alleges that CO Butler searched his cell on October 2, 2016. (ECF No. 1, PageID.25.) During the search, CO Butler allegedly broke a key in the padlock securing Dahlstrom's locker. (*Id*.) Dahlstrom was told what had happened. (*Id*.) When Dahlstrom asked Butler for a grievance form to complain about damage to his padlock, she allegedly responded: "[I]f you think you can grieve me I'll have you locked up and thrown into the hole!" (*Id*., PageID.27.) Dahlstrom says he overheard Defendant Butler state: "[W]ell, will [sic] see how he likes it when I write him up for 'Sexual Misconduct'!" (*Id*., PageID.28.) Dahlstrom says that he wrote grievances on Defendant Butler and others.

Dahlstrom alleges that he continued to experience problems with Butler after the October 2, 2016 incident. Dahlstrom says that, on November 18, 2016, he heard Butler state: "I own a shotgun and a pistol." (*Id*., PageID.33.) Dahlstrom believes that this statement was directed at him. On December 1, 2016, Dahlstrom says that Officer Laponza told him that "Butler will get you in trouble." (*Id*., PageID.35.)

3

Dahlstrom says that, on January 23, 2017, Defendant Butler searched his cell and took a blanket off Dahlstrom's bunk for ten minutes. Dahlstrom believes that he was being harassed.

Dahlstrom says that, on March 5, 2017, Defendant Butler threw his food bowl and spork on the floor. Two days later, on the morning of March 7, 2017, Dahlstrom heard Defendant Butler state to another Officer that Dahlstrom was a "pain in the ass," a few minutes before she came into his cell and started throwing his property on the floor. (*Id.*, PageID.44.) Dahlstrom says that CO Butler ordered him to remove a wet towel from the end of his bunk and then wrote a false misconduct for disobeying a direct order. (*Id.*, PageID.44-45.) Dahlstrom says he was found guilty of a class II misconduct and given two days loss of privileges. (ECF No. 1-5, PageID.138.) Dahlstrom says this misconduct ticket was also written for retaliatory purposes.

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Retaliation

Corrections Officer Butler argues that Dahlstrom has not submitted evidence creating genuine issues of material fact as to either of his retaliation claims.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*.

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has also employed a burden-shifting approach with respect to the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

**1. October 2, 2016 Threat**

It is clear from reviewing Dahlstrom's lengthy complaint that he had a contentious relationship with a number of Corrections Officers. And the padlock incident at the heart of Dahlstrom's first claim is a relatively detailed story. (*See* ECF No. 9, PageID.217-20 (Judge Maloney's screening opinion).) The padlock incident began on October 2, 2016, when Corrections Officers searched Dahlstrom's living area due to suspicions that someone in the area had "spud juice" (homemade alcohol). (ECF No. 106-2, PageID.1833 and ECF No. 106-3, PageID.1840.) Dahlstrom was not present during the search. (ECF No. 106-2, PageID.1834 and ECF No. 106-3, PageID.1841.)

Butler attests that her key got stuck in Dahlstrom's lock and another Corrections Officer broke the key while trying to remove it. Butler explained that it is not unusual for keys to get stuck or broken in these locks. (ECF No. 106-2, PageID.1834.) Corrections Officer MacLean agrees with Butler's account of the incident. (ECF No. 106-3, PageID.1839-1844.)

Regardless of how the padlock was broken, afterwards Dahlstrom was paged to the housing unit, and Corrections Officer MacLean told him what had happened. MacLean says he informed Dahlstrom that another lock would be issued to him at no

6

cost.  (ECF No. 106-3, PageID.1841.)  Butler's affidavit supports this account. (ECF No. 106-2, PageID.1834.)  Also, Butler states that Dahlstrom asked Corrections Officer MacLean for a grievance form and MacLean gave him a form. (ECF No. 106-2, PageID.1835.)  According to the COs, that was essentially the end of the incident.

Dahlstrom has a different view of events.  He provided the declaration of prisoner Paul Hurd, who stated, under penalty of perjury, that he heard Butler "verbally threaten" Dahlstrom with "disciplinary sanctions" after Dahlstrom asked her for a grievance form.  (ECF No. 111-3, PageID.1980.)  Hurd also stated that "Butler broke her key off when she inserted it into Plaintiff's Dahlstrom's padlock." (*Id.*)

In Dahlstrom's unverified complaint, he gave the following reasons for asking for a grievance form:

> 44 - Plaintiff proceeded to ask Officer Butler for a new lock or "please tell me what I need to do to protect my property".
>
> Excessive Use of Force & Retaliation
>
> 45 - Officer Butler then refused to answer me and she became irate with malice and said in a loud voice, "I don't care about your requests or about your lock, I am just going to file my report to Inspector so I can get a report to make you pay for my key".
>
> 46 - Plaintiff then asked Officer Butler for a grievance form to address this issue through proper procedures.
>
> 47 - Upon asking for grievance form, Officer Butler again raised her voice ordering me away from her desk.
>
> 48 - Officer MaClean heard Officer Butler and walked up to desk where I (Plaintiff) proceeded to turn and walk away in compliance to Officers Butler's remarks to, "I'm ordering you away from my desk right now"!

(ECF No. 1, PageID.26.)

Butler, however, attests that she never threatened Dahlstrom and specifically did not threaten him to throw him in the hole or issue a sexual misconduct ticket. (ECF No. 106-2, PageID.1834-1835.)  And, according to Butler, Dahlstrom was not issued a sexual misconduct ticket or placed in administrative segregation.  (*Id.*)

Although the COs attest that Dahlstrom received a new padlock at no cost, Dahlstrom's unverified complaint gives a different account.  The complaint acknowledges that Dahlstrom received a new padlock on October 14, 2016.  (ECF No. 1, PageID.31.)  Dahlstrom's unverified complaint states that his prison account was debited $5.07 on November 2, 2016, to pay for the padlock, and that he was reimbursed for this expenditure on November 21, 2016.  (*Id.*, PageID.32-33.)

CO Butler seeks summary judgment on this claim, arguing, first, that MDOC surveillance video shows that she did not threaten Dahlstrom (ECF No. 106, PageID.1817-18) and second, that Dahlstrom did not engage in protected conduct when he asked for a grievance form because he did not have a legitimate claim against Butler (*id.*, PageID.1818-20). Butler has not provided the video to the Court, so the undersigned declines to draw conclusions about what is shown on the video. But, the undersigned concludes that Dahlstrom's complaint against Butler was frivolous.

In general, "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). But, [t]his right is protected . . . only if the grievances are not frivolous." *Id*. "Abusive or manipulative use of a grievance system would not be protected conduct." *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012).

"Some cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis.*" *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018). The Sixth Circuit has also noted that a non-frivolous grievance as a "legitimate" grievance. *Id*. at 265.

Here, the undersigned concludes that Dahlstrom's grievance is frivolous because he is raising a *de minimis* issue. Part of the first page of Dahlstrom's grievance relating to the events of October 2, 2016 is shown below.

9

> **MICHIGAN DEPARTMENT OF CORRECTIONS**  R-1  4835-4247 10/94
> **PRISONER/PAROLEE GRIEVANCE FORM**  CSJ-247A
>
> Date Received at Step I  10-4-16   Grievance Identifier: KCA16109113621171A
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedures, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | KARL Dahlstrom | 269338 | KCF | H-1-18 | 10/2/16 | 10/3/16 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 10/2/16
> If none, explain why.    I tried to resolve the issue with C/O Butler right there and then, but she threatened to write a major misconduct report against me for Sexual Assault or other Sexual misconduct (which is the subject issue of this grievance) if I did not leave the area, which I complied with immediately. I also talked to C/O McLain, to no avail.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>    C/O Butler retaliated against me by threatening to write a major Sexual Misconduct report against me falsely, when I tried to speak to her about the fact that she broke my padlock as the result of her having used her key to open it. All I was trying to find out from C/O Butler was how she or I were to go about being reimbursed for my padlock that she broke or to obtain another one for me. For some reason, which had little to do with my tone towards her because I was calm and respectful the whole time, which the surveillance tape from the cameras would show, she became irate with me and threatened to have me taken to the Seg. cell (Hole), for Sexual Misconduct if I did not shut up and leave the area. Her face was grimacing when she said this to me.
>    Under the First Amendment to the U.S. Constitution, as well as the MDOC Prisoner Grievance Policy, I had a free speech right to talk to C/O Butler about being reimbursed for the padlock she somehow broke when she inserted her key into it to open it, or to obtain another padlock. When she stated to me that she would use the disciplinary process, the equivalent of threatening to issue a Sexual Misconduct against me, which she knew would have been false, this showed her intent and motivation to retaliate against me simply for what I was trying resolve regarding my padlock. As an aside, Butler was overheard asking C/O McLain to figure out a way for her to have this grievant placed in the Hole for some sort of Sexual Misconduct charge, which it also appeared McLain was acquiescing in to do.            (without Prejudice)
>    Grievant feels he should be moved to C-Unit or some    Karl Dahlstrom
> other unit, to make it harder for Butler to retaliate.   Grievant's Signature
> Her actions are clearly prohibited by law and ethics. My
> padlock must also be replaced too.
>
> RESPONSE (Grievant Interviewed?  ☒ Yes  ☐ No  If No, give explanation. If resolved, explain resolution.)

(ECF No. 1-5, PageID.128.) It is clear that the triggering event for this grievance is Dahlstrom's complaint about his broken padlock. Dahlstrom states that "[u]nder the First Amendment to the U.S. Constitution, as well as the MDOC Prisoner Grievance Policy, I had a free speech right to talk to C/O Butler about being reimbursed for the padlock she somehow broke when she inserted her key into it to open it, or to obtain another padlock." (*Id.*) He goes on to describe Butler's reaction to this discussion, which, according to Dahlstrom, included various threats. (*Id.*)

10

Because a great deal has been written about the padlock incident and events afterwards, it is important to clarify, first, that Dahlstrom's complaint about his broken padlock and his request for a grievance form constitute the alleged protected conduct, and second, that Butler's reaction to Dahlstrom's complaint – by allegedly making various threats – constitutes the alleged adverse action in this claim. Dahlstrom's grievance, which he filed the next day, does not constitute the protected conduct because that grievance follows the alleged adverse action by Butler.

Dahlstrom's initial complaint about the padlock and associated request for a grievance form are *de minimis*. According to documents Dahlstrom provided in support of his complaint, he received a new padlock on October 14. (ECF No. 1-5, PageID.129.) As noted above, in his unverified complaint, he acknowledges that he received reimbursement for the lock on November 21, 2016. (ECF No. 1, PageID.33.[1]) Thus, Dahlstrom has failed to support this claim with documents meeting the requirements of Fed. R. Civ. P. 56. Affidavits provided by Butler and MacLean indicate that Dahlstrom received a new padlock at no cost. (*See* ECF 106-2, PageID.1834 (Butler's affidavit); ECF No. 106-3, PageID.1841 (MacLean's

---

[1] The materials a court may consider in making this assessment are identified in Fed. R. Civ. P. 56(c). Courts, however, allow a plaintiff to rely on a "verified complaint," which has "'the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment" if the complaint is verified in the matter called for in 28 U.S.C. § 1746. *Hursey v. Anderson*, No. 2:15-CV-00145, 2020 WL 6204478, at *4 (W.D. Mich. Apr. 27, 2020), report and recommendation adopted, No. 2:15-CV-145, 2020 WL 6196282 (W.D. Mich. Oct. 22, 2020) (quoting *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (citation omitted). Dahlstrom's complaint is not a verified complaint.

11

affidavit).) But even if the Court credited Dahlstrom's claim that he had to pay for a new lock initially, he acknowledges that he was reimbursed.

In addition, Dahlstrom fails to allege that he suffered some adverse impact as a result of the damage to the padlock. When a prisoner experiences no adverse impact as a result of actions by an MDOC employee, the prisoner's grievance about the action is frivolous. *See, e.g.*, *Thaddeus-X v. Love*, 215 F.3d 1327, *3 (6th Cir. 2000) (holding that "Thaddeus-X's threat to file a grievance against the defendant because he was eating food at the prison guard desk is patently frivolous as the defendant's conduct had no adverse impact on Thaddeus-X"); *Roden v. Plont*, No. 2:17-CV-00188, 2019 WL 5275035, at *4 (W.D. Mich. Aug. 14, 2019), report and recommendation adopted, No. 2:17-CV-188, 2019 WL 4593514 (W.D. Mich. Sept. 23, 2019) (finding grievance was frivolous where plaintiff had not stated "any facts indicating that he (or anyone else) was harmed by Plont's decision to forgo sanitizing the food services line").

Dahlstrom's grievance complains about Butler's response to his complaint about the broken padlock. (*See* ECF No. 1-5, PageID.128, 130.) Butler's alleged response, if proven true, would be a significant overreaction to a routine, nonserious situation. In addition, her reaction might constitute an adverse action if Dahlstrom had shown that he had engaged in protected conduct.[2] Here, however, Dahlstrom

---

[2] The Sixth Circuit has held that a grievance complaining about verbal abuse is frivolous because "[a]n inmate has no constitutionally protected right to be free from verbal abuse." *Scott v. Kilchermann*, No. 99-1711, 2000 WL 1434456, at *2 (6th Cir. Sept. 18, 2000) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *see also Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002) ("Even if the grievance was not

12

has not shown that he engaged in protected conduct. As Butler attests, COs have authority to search a prisoner's possessions, including property that is under lock. (ECF 106-2, PageID.1833 (Butler's affidavit).) This policy certainly makes sense from a security point of view. Butler also states that locks occasionally break. (*Id.*, PageID.1834.) That is what happened here. But a complaint about a broken padlock is not a sufficient basis for a First Amendment lawsuit when the broken padlock is replaced by the MDOC at no cost to the prisoner and the prisoner is not otherwise harmed. The undersigned respectfully recommends that the Court dismiss this claim.

### 2. March 7, 2017 misconduct ticket

Dahlstrom claims that Butler retaliated against him by issuing him a ticket for disobeying a direct order ticket on March 7, 2017. The documents before the Court confirm that Butler issued Dahlstrom a misconduct ticket on that date for refusing her order to remove a towel from his bunk. (*See* ECF No. 1-5, PageID.137 (misconduct report).) Dahlstrom was found guilty after a hearing on March 13, 2017. The hearing report stated:

---

frivolous, he did not state a claim for retaliation in the form of verbal harassment. An inmate has no right to be free from verbal abuse, and minor threats do not rise to the level of a constitutional violation.").

13

> **HEARING REPORT (Do Not Complete If Hearing Waived)**
>
> Evidence and/or prisoner statement in addition to misconduct report: Prisoner Dahlstrom states that he has been having problems with this officer and has filed several grievances against her for harassment. He also state that he was not even in the unit at the time of the alleged incident.
>
> Reasons for findings: I find prisoner Dahlstrom guilty of this misconduct. A check of Omni revealed Jones did lock at KCF when the alleged infraction occurred. A check of the Camera System revealed prisoner Dahlstorm was in his cube and the officer did stop in front of the cell and there was a interaction between the two, it also shows that prisoner Dahlstrom did not remove the towel from the end of the bed. 2 days LOP

(*Id.*, at PageID.138.)

Dahlstrom appealed the finding, but the decision and sanctions were upheld:

> Misconduct and appeal reviewed. The misconduct was written, reviewed and heard within the scope of Policy, Procedure and Administrative Rules. The Hearing Officer made a determination based on evidence provided at the hearing, and viewing the surveillance cameras. Prisoner's appeal is reviewed in full. It is found that prisoner placed a towel at the end of his bunk at 0955hrs where it remained until Officer Butler removed it at approximately 1300hrs. At approximately 1200hrs Officer Butler can be seen conducted the unit round as noted within the misconduct. The order issued by Officer Butler was a valid order and reasonable order and noncompliance would not have placed prisoner in any imminent danger. Prisoner did refused the order as video surveillance reveals that the towel remained unmoved for over an hour. Prisoner's defense that the officer is harassing him is found to be without merit and has no bearing on this event. The charge of a Class II misconduct does not require that the Hearing Officer interview witnesses nor does it dictate that the Hearing Investigator be appointed. The outcome is based on preponderance of evidence which is supported by the officer's statements and video evidence. Misconduct, Hearing and Sanctions upheld.

(*Id.*, PageID.139.)

Butler again argues that Dahlstrom did not engage in protected conduct prior to his receipt of the March 7, 2017, misconduct ticket. (ECF No. 106, PageID. 1820-23.) Butler reviews the grievances Dahlstrom filed in the months and days before this incident and asserts that each was frivolous. Second, Butler argues, pursuant to the burden-shifting formula in *Thaddeaus-X*, 175 F.3d at 175, that this retaliation claim should be dismissed at summary judgment because she would have written the misconduct ticket against Dahlstrom regardless of any protected conduct he may have engaged in. (ECF No. 106, PageID.1823-26.) The undersigned

14

concludes that Butler has shown that she would have written the misconduct ticket against Dahlstrom regardless of his prior grievances against her.

Butler's affidavit includes the following statement:

> 26. I wrote a class II misconduct ticket on Dahlstrom for disobeying a direct order for refusing to comply with my command to remove the towel from his bunk.
>
> 27. I was not motivated by retaliation to write the misconduct ticket on Dahlstrom for disobeying a direct order. My motive in writing the ticket was Dahlstrom's violation of prison rules by refusing to remove the towel from his bunk after I told him to remove it. I was not motivated to write the ticket by any grievances or complaints Dahlstrom may have made against me. If Dahlstrom did write such grievances or makes such complaints, I would have written the misconduct ticket against him for disobeying a direct order even if he had not.
>
> 28. March 7, 2017, was not the first time Dahlstrom refused to obey my direct order. Two days earlier, on March 5, 2017, I had ordered Dahlstrom to remove items from on top of his locker, and he failed to comply with that order.

(ECF No. 106-2, PageID.1836.)

Here, Dahlstrom does not dispute that he disobeyed direct orders on March 5 or March 7, 2017. He also does not provide evidence indicating that other prisoners who engaged in consecutive violations were not issued misconduct tickets. Dahlstrom's relationship with COs from October 2016 through March 2017 was contentious. "[A]n inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Spies v. Voinovich*, 48 F. App'x

15

520, 524–25 (6th Cir. 2002) (internal quotation and citation omitted). Moreover, "maintaining institutional security and preserving internal order and discipline are essential goals" for prison officials. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Here, Butler issued Dahlstrom an order and Dahlstrom disobeyed that order. According to Butler, this was the second such incident in a few days. She explains that she would have written the ticket regardless of protected conduct by Dahlstrom, and Dahlstrom fails to undercut this assertion. *See, e.g., Cameron v. Newcomb*, No. 2:19-CV-00071, 2020 WL 7264968, at *6 (W.D. Mich. Nov. 16, 2020), report and recommendation adopted, No. 2:19-CV-71, 2020 WL 7263379 (W.D. Mich. Dec. 10, 2020) (stating that Plaintiff did not dispute that he disobeyed a direct order while he was on a job assignment and did not show that other prisoners who engaged in the same conduct received a less severe sanction, thus warranting summary judgment in favor of defendant). Dahlstrom has failed to disprove this claim or present evidence disputing this claim.

Accordingly, the undersigned concludes that Butler has shown that she is entitled to summary judgment as to Dahlstrom's second claim.

### V. Official Capacity Claim

To the extent that Dahlstrom is suing Officer Butler in her official capacity, such a claim is barred by the Eleventh Amendment. The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has

16

> Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials. *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). To the extent that Dahlstrom seeks money damages, costs and fees from Defendant Butler in her official capacity, that part of his lawsuit is barred by sovereign immunity.[3]

## VI. Qualified Immunity

As an alternative argument, Defendants move to dismiss Plaintiff's damages claims by asserting qualified immunity from liability. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions

---

[3] "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Only the second exception is potentially at issue here. "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law." *Id*. Plaintiff requested unspecified injunctive relief due to mental distress and damage to his reputation. (ECF No. 1, PageID.17.) Plaintiff stated he was eventually transferred to another unit. (*Id*., PageID.8.) Plaintiff requests a "mandatory injunction for the health and safety of others" and other injunctive relief for violations of criminal and civil laws. (*Id*., PageID.94-95.) Plaintiff requests injunctive relief to expunge his disciplinary convictions. (*Id*., PageID.99.)

17

generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006).

"A right is 'clearly established' for qualified immunity purposes if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156 (2001)). The inquiry whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156; *see also Plumhoff v. Rickard*, 572 U.S. 765, 779, 134 S. Ct. 2012, 2023 (2014) (directing courts "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced") (internal quotation marks and citations omitted). Thus, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Humphrey*, 482 F.3d at 847 (internal quotation marks omitted).

"The relevant inquiry is whether existing precedent placed the conclusion" that the defendant violated the plaintiff's rights "in these circumstances 'beyond debate.'" *Mullenix v. Luna*, 36 S.Ct. 305, 309 (2015), citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In the undersigned's opinion Butler is entitled to the defense of qualified immunity from liability. Dahlstrom has failed to support his retaliation claims (1) by showing that he engaged in prior protected conduct as to his first claim, and (2) by establishing a causal connection between the misconduct ticket she issued him after he refused her direct order and his alleged protected conduct.

### VII. Recommendation

Accordingly, it is respectfully recommended that the Court grant Defendant Butler's motion for summary judgment (ECF No. 105) and dismiss this case.

Dated: April 7, 2021       /s/ *Maarten Vermaat*
                           MAARTEN VERMAAT
                           U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).