UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KARL DAHLSTROM, II,

    Plaintiff,

v.

S. BUTLER, et al.,

    Defendants.
_____/

Case No. 2:18-cv-101

Hon. Hala Y. Jarbou

## ORDER

This is a civil rights action brought by Plaintiff Karl Dahlstrom, II, a prisoner in the Michigan Department of Corrections. The case has an extensive procedural history, best summarized in the April 7, 2021, Report and Recommendation (R&R) that is the subject of this order. (ECF No. 121.) There are two claims against a single Defendant—Corrections Officer Seham Butler—remaining in this case. Each claim alleges that Butler retaliated against Dahlstrom for exercising his First Amendment rights by filing or requesting to file grievances. Butler moved for summary judgment on both claims. (ECF No. 105.) The R&R recommends granting the motion. Dahlstrom timely objected. (ECF No. 124.) For the reasons below, the Court will adopt the R&R with respect to its recommendation regarding Eleventh Amendment immunity. The remainder of the R&R will be rejected.

**I. Background**

Because the R&R covers the relevant facts in greater detail, the Court will only recite the bare necessities here.

Dahlstrom has filed a slew of grievances and other complaints against Butler. His claims in this lawsuit are based on two incidents of alleged retaliation by Butler. On October 2, 2016,

Dahlstrom claims that Butler's key broke in his padlock while Butler was executing a search of his locker.  Dahlstrom says that Butler was first aloof and then confrontational when he asked her what he should do about the broken lock.  According to Dahlstrom, Butler refused to answer questions about replacing the lock, and indicated that Dahlstrom would be charged for any replacement.  When Dahlstrom inquired further and requested a grievance form, Butler allegedly threatened to place Dahlstrom in segregation or to issue a false misconduct ticket against him for sexual misconduct.  Dahlstrom ultimately did file a grievance relating to the padlock issues.  The padlock was replaced at no cost to Dahlstrom.[1]

The next incident of alleged retaliation occurred on March 7, 2017.  Dahlstrom had a wet towel on his bed.  Butler ordered him to remove it.  Dahlstrom says he did; Butler says he did not.  Butler wrote a misconduct ticket against Dahlstrom for refusing to obey a direct order.  Dahlstrom claims the ticket was thus issued under false pretenses and was made for retaliatory purposes.

## II. Standards

### A. Objections to Reports and Recommendations

Under 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court must conduct de novo review of those portions of the R&R to which objections have been made.  Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

---

[1] Dahlstrom's prisoner account was originally debited the price of the new padlock; the cost was reimbursed about six weeks later.

**B. Summary Judgment**

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289). In considering the facts, the Court must draw all inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249.

**III. Analysis**

Dahlstrom raises a variety of objections, many of which are irrelevant or improper. He does object to the R&R's finding of insufficient evidence to support his claims, and argues that the magistrate judge failed to consider his evidence. (Pl.'s Objs., PageID.2078.) The key issue here is whether Dahlstrom has put forth cognizable evidence sufficient to survive Butler's motion for summary judgment. As will be explained, both Butler and the R&R conclude that Dahlstrom has failed to submit proper evidence sufficient to create a genuine dispute of material fact. The R&R correctly concludes that Dahlstrom cannot rely on any allegations in his complaint to resist

3

summary judgment because he did not provide a verified complaint. (*See* R&R, PageID.2061 n.1 and accompanying text.) However, Dahlstrom treated his brief in opposition as an unsworn declaration, and he did so in compliance with 28 U.S.C. § 1746(2). *See Ion v. Chevron*, 731 F.3d 379, 382 n.2 (5th Cir. 2013) (brief responding to motion for summary judgment may be treated as unsworn declaration capable of creating genuine disputes of fact if drafted and certified in compliance with 28 U.S.C. § 1746(2)). Moreover, two declarations attached to his brief—one made by Dahlstrom himself and another made by a fellow prisoner—put facts in dispute sufficient to survive Butler's motion for summary judgment.

### A. The October 2, 2016 Incident

A successful First Amendment retaliation claim consists of three elements: (1) "the plaintiff engaged in protected conduct"; (2) "an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999).

The R&R recommends dismissing the retaliation claim based on the events in October 2016 because Dahlstrom was not engaging in protected conduct when he requested a grievance form in connection with his broken padlock. The First Amendment protects a prisoner's right to file grievances against prison officials. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). This protection does not extend to frivolous grievances or grievances relating to *de minimis* matters. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Herron*, 203 F.3d at 415). Because Dahlstrom received a free replacement padlock, the R&R concluded that any request to grieve issues relating to the padlock would necessarily be frivolous and therefore unprotected by the First Amendment.

But the R&R's analysis rests on the assumption that Dahlstrom was, in fact, told that his padlock would be replaced at no cost. Dahlstrom says he asked Butler to return the padlock, but she refused. (Pl.'s Opp'n Br., PageID.1941.) He asked how he was supposed to protect his property. (*Id.*) Butler allegedly responded that she did not "care about your requests or about your lock" and told Dahlstrom he would have to pay for a replacement. This account is corroborated by Paul Hard's declaration, which is attached to Dahlstrom's opposition brief. (Hard Decl., ECF No. 111-3, PageID.1980.)

Butler says things happened differently. She says Dahlstrom was immediately informed that he would get a new lock at no cost. Thus, there is a genuine dispute of fact. This dispute is material because, if Dahlstrom's version of the facts are true, Dahlstrom was engaging in protected conduct. By his account, he would have no reason to believe that his padlock would be replaced, or if it were, that he would not be charged for it. He was therefore within his rights to request a grievance form to file a grievance about the padlock issue.

Dahlstrom has also put forth evidence sufficient to satisfy the remaining two elements of a First Amendment retaliation claim. In response to his request for a grievance form, he says Butler threatened to place him in segregation (*id.*) or write him a sexual misconduct ticket (Pl.'s Opp'n Br., PageID.1942). Threats qualify as adverse actions so long as the threat is capable of deterring "a prisoner of ordinary firmness from engaging in [the] protected conduct." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Placement in segregation is an adverse action, *Thaddeus-X*, 175 F.3d at 396, as is writing false misconduct tickets. *See Irvin v. Fluery*, No. 2:07-cv-117, 2010 WL 1038647, at *4 (W.D. Mich. Jan. 8, 2010) (threat of false misconduct ticket which could cause "extended loss of liberty" was an adverse action). Considering the threshold for deterrence—a

5

person of ordinary firmness—is not "overly difficult" to clear, the Court finds that threats of segregation or false misconduct tickets satisfy the adverse action prong.

The final element is also met here. By Dahlstrom's account, when he asked for a grievance form, Butler replied "[i]f you want to grieve me I'll have you [placed in segregation]." (Hard Decl., PageID.1980.) Thus, the adverse action was motivated by Dahlstrom's protected conduct. Butler and others contest Dahlstrom's version of the facts. But at this stage, the Court may not resolve factual disputes and must construe the evidence in Dahlstrom's favor. His claim for retaliation based on threatened consequences for filing a grievance in October 2016 survives summary judgment.

**B. The March 7, 2017 Incident**

On March 7, 2017, Butler wrote Dahlstrom a misconduct ticket for violating a direct order to remove a wet towel from his bed. The R&R recommended dismissing the retaliation claim based on the ticket after finding: (1) Dahlstrom did not dispute that he disobeyed Butler's order; (2) Dahlstrom failed to connect this adverse action to any protected conduct; and (3) Butler offered an undisputed explanation that she would have issued the misconduct ticket no matter what. Dahlstrom objects that he *did* obey Butler's order regarding the towel and that, given the temporal proximity to his October 2016 grievance, it can be inferred that Butler wrote a false misconduct ticket as retaliation.

Circumstantial evidence can be used to show a retaliatory motive behind a prison official's actions. *Hill*, 630 F.3d at 475-76. Disparate treatment, i.e., where one prisoner is punished for conduct that largely goes unpunished, as well as temporal proximity to protected conduct by a prisoner, can be used to demonstrate retaliatory intent. *Id.* However, "temporal proximity between filing grievances and the adverse action . . . [does not] alone establish[] retaliatory motive." *Id.* (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 525 (6th Cir. 2010)). And the mere filing of

6

grievances, without more, is generally insufficient: "an inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Spies v. Voinovich*, 48 F. App'x 520, 524-25 (6th Cir. 2002) (internal quotation and citation omitted).

Dahlstrom provides scant evidence of retaliatory intent. He does not point to any disparate treatment. There is weak temporal proximity; he filed the padlock-related grievance six months before receiving the March misconduct ticket. Dahlstrom does provide a declaration from another prisoner, who claims to have heard Butler plotting against Dahlstrom with another corrections officer, though this is hearsay. (Fawcett Decl., ECF No. 111-4, PageID.1982.) But there is one crucial issue: Dahlstrom avers that he "complied" with Butler's order to remove the towel from his bed. (Dahlstrom Decl., ECF No. 111-5, PageID.1985.) This creates a genuine dispute of material fact.

This dispute is material because the question of retaliatory motive becomes much closer assuming Dahlstrom obeyed Butler's order. In that case, disparate treatment is irrelevant, as is Butler's claim that she would have issued the misconduct ticket to anyone. Dahlstrom says he complied with Butler's order; the misconduct ticket was thus based on false pretenses.[2] Drawing all reasonable inferences from a false misconduct ticket in Dahlstrom's favor, the Court finds the false misconduct ticket to be indicative of a retaliatory motive. Summary judgment cannot be granted against Dahlstrom on this claim.

---

[2] Butler, of course, contends that Dahlstrom disobeyed her order. Apparently, video footage from a security camera recorded the incident in question. (*See* R&R, PageID.2064.) A report from the hearing regarding the March 7 misconduct ticket states that the hearing officer viewed this footage and saw "that prisoner Dahlstrom did not remove the towel from . . . the bed." (*Id.*) On summary judgment, courts must disregard a party's assertions of fact where those assertions are clearly contradicted by video footage. *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007); *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015) (internal quotation marks omitted). Butler did not provide the footage in question here. The Court must therefore take Dahlstrom's contrary statements as true.

7

### C. Qualified Immunity

In the alternative, the R&R recommends granting Butler's motion for summary judgment on the basis of qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Officials are only liable for constitutional violations where the right allegedly violated was "clearly established at the time of the violation[.]" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). The "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Consequently, the plaintiff must cite to existing case law to show that the right in question was clearly established in the relevant factual context at the time of the alleged violation. *Rudlaff*, 791 F.3d at 643. Prior cases need not be "directly on point for a right to be clearly established, [but] existing precedent must have placed . . . the constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation marks omitted).

The R&R recommends a finding of qualified immunity for the same reasons it found Dahlstrom's claims failed as a matter of law: "Dahlstrom has failed to support his retaliation claims (1) by showing that he engaged in prior protected conduct as to his first claim, and (2) by establishing a causal connection between the misconduct ticket she issued him after he refused her direct order and his alleged protected conduct." (R&R, PageID.2069.)

Dahlstrom's objections that he has shown protected conduct and a causal relationship are applicable here. He also objects that qualified immunity does not cover Butler here because the rights at issue were clearly established at the time of the alleged violations. (Pl.'s Objs.,

PageID.2081.) He is correct. As discussed above, it is clearly established that prison officials may not threaten to place a prisoner in segregation or write a false misconduct ticket when that prisoner engages in the protected conduct of filing a grievance. *See Hill*, 630 F.3d at 472; *Thaddeus-X*, 175 F.3d at 396. Should Dahlstrom prove his claims, qualified immunity would not shield Butler.

### D. Eleventh Amendment Immunity

The R&R recommends that Dahlstrom's claims are barred by the Eleventh Amendment "[t]o the extent that Dahlstrom seeks money damages, costs, and fees from Defendant Butler in her official capacity[.]" (R&R, PageID.2067.) Dahlstrom does not object to this portion of the R&R, and the R&R is correct on this issue. Dahlstrom may not recover money from Butler to the extent he is suing her in her official, rather than individual, capacity.

### E. Miscellany

As mentioned earlier, Dahlstrom makes a variety of irrelevant and improper objections. He asks for leave to amend his complaint should the Court find either of his remaining claims subject to summary judgment. The issue is moot because both his claims survived summary judgment, but the complaint was filed in July 2018. (ECF No. 1.) It is way too late in the game for amendments. Dahlstrom also challenges a variety of prior decisions and orders by the magistrate judge, and further argues that Butler should be sanctioned and held in contempt for discovery violations. Without touching the merits on either front, neither issue is properly raised through objections to a report and recommendation. Finally, Dahlstrom advances various arguments about claims that have already been dismissed. Those objections are improper and were not considered by the Court.

## IV. Conclusion

For the above reasons,

**IT IS ORDERED** that the Report and Recommendation (ECF No. 121) is **ADOPTED in part** and **REJECTED in part**. The Court **ADOPTS** the recommendations relating to Eleventh Amendment immunity but otherwise **REJECTS** the Report and Recommendation.

**IT IS FURTHER ORDERED** that Plaintiff's objections to the Report and Recommendation (ECF No. 124) are **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (ECF No. 105) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant in her official capacity are **DISMISSED** as barred by the Eleventh Amendment.

Dated:  May 12, 2021                          /s/ Hala Y. Jarbou
                                                                 HALA Y. JARBOU
                                                                 UNITED STATES DISTRICT JUDGE